UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HENRY PARKER,

    Plaintiff,

v.

CITY OF TAYLOR, JAMES PILCHAK, BRIAN WOJTOWICZ, STEVE PORTA, CHRIS CATES, DOMINIC DIGGS-TAYLOR, in their individual and official capacities,

    Defendants.
_____/

Case No. 15-10113

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [26]**

This matter comes before the Court on Defendants' motion for summary judgment. Plaintiff brings several claims against Defendants, alleging excessive use of force, false arrest and/or imprisonment, unreasonable seizure without probable cause, and malicious prosecution. For the reasons stated herein, Defendants' motion is GRANTED IN PART and DENIED IN PART.

**I.    Facts**

On the evening of January 20, 2013, Plaintiff, who was 71 at the time, received a call from his daughter-in-law informing him that his son was at Taylor Police Department and needed to be bailed out of jail. (Dkt. 28, at 9.) Plaintiff drove toward Taylor Police Department, and asked several people for help finding the station. (*Id.* at 9-10.) Ultimately, Plaintiff made it to the station, but (purportedly unbeknownst to him) entered and walked through a restricted police-only parking lot. (*Id.* at 10.) Plaintiff, wearing a winter coat with

the hood on, was observed "slowly walking" through the restricted lot by Defendant officers Pilchak and Wojtowicz. (Dkt. 26, at 12.) The officers radioed into dispatch that they "had one in the back restricted parking lot." (*Id.*)

Defendants Pilchak and Wotjowicz approached Plaintiff asked why he was "peeking in" the police cars. (Dkt. 28-2, at 21.) Plaintiff testified that he responded by that he was there to get somebody out of jail. (*Id.*) Plaintiff admits he was "confused" by some of the officers' questions and "started thinking maybe I oughtn't to say nothing at all." (*Id.* at 30.) Plaintiff further testified, "I felt like these guys are really trying to irritate me ... so I just hushed. So I just started saying I don't know, I don't know." (*Id.* at 31.) Around this time, Defendants Porta, Cates, and Diggs-Taylor came from inside the station to the parking lot. (Dkt. 1, at ¶ 12.) Plaintiff was told he was trespassing and directed to place his hands on the hood of a police car; he immediately complied. (*Id.* at 21-22.) Over the next "matter of seconds," the stories of the parties vary—but only slightly.

Plaintiff claims he had both of his hands on the police vehicle and had his back toward the Defendant officers, when one officer "wrenched [his] hand off of the car and twisted it behind [his] back" to handcuff him. (Dkt. 1, at ¶¶ 14-15.) Plaintiff admits he turned his head around and looked over his left shoulder, and Defendants told him to stop resisting. (Dkt. 28-2, at 22-23.) Then, Plaintiff claims, "each of the individually-named Defendants began to punch [him] in his side and thigh and knee him in his buttocks, or otherwise fail[] to intervene on [his] behalf." (Dkt. 1, at ¶ 16.) Plaintiff contends the beating by Defendants took place both "before and after" he was handcuffed, and he did not resist in any way. (Dkt. 28-2, at 24.) Plaintiff testified he would think the entire incident—from the time he was

2

told to put his hands on the car until the time the alleged excessive force ended—took place "[i]n a matter of seconds." (*Id.*)

Defendants claim that while trying to handcuff Plaintiff, he didn't merely look over his shoulder, but rather turned around 180 degrees and tensed up with an aggressive look on his face. (*See, e.g.*, Dkt 28-3, at 18.) Defendant Wojtowicz claims Plaintiff was "actively resisting arrest." (Dkt. 28-4, at 17.) And Defendant Pilchak testified that the thought "crossed his mind" that Plaintiff may try to flee or fight with the officers. (Dkt. 28-3, at 18.) Defendants admit several knee kicks, elbow strikes, and other pain compliance techniques were administered or attempted so as to gain control of Plaintiff and get him handcuffed. (Dkt. 26, at 14-18.)

Plaintiff spent several hours in jail and was permitted to leave after paying a bond of $100. (Dkt. 28-2, at 26-27.) Plaintiff was charged with trespassing and resisting arrest, but the charges were subsequently dismissed.[1] (Dkt. 1, at ¶¶ 18-19.) On January 12, 2015, Plaintiff filed suit against the City of Taylor and the five officers involved pursuant to 42 U.S.C. § 1983 and related state law, alleging violation of his Fourth Amendment constitutional right to be free from excessive force, false arrest and/or false imprisonment, unreasonable seizure without probable cause, and malicious prosecution. Defendants now seek summary judgment in their favor.

---

[1] The Register of Actions from the criminal matter in which Plaintiff was charged with one count of trespassing indicates the case was "dismissed by party per plea" on May 22, 2013, and there was "no reason given." (Dkt. 28-12.)

**II.    Summary Judgment**

It is well established that summary judgment under Federal Rule of Civil Procedure 56 is proper when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *U.S. S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)) (quotations omitted). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

When considering the material facts on the record, a court must bear in mind that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

**III.   Analysis**

  **A.    Counts II, III, IV, and V**

Plaintiff brings state and constitutional claims of false arrest and/or imprisonment, unreasonable seizure without probable cause, and malicious prosecution. Each of these claims require Plaintiff to show that there was not probable cause for his arrest. *See, e.g.*, *Stemler v. City of Florence*, 126 F.3d 856, 871 (6th Cir. 1997) (false arrest claim under § 1983); *Hansel v. Bisard*, 30 F. Supp. 2d 981, 985 (E.D. Mich. 1998) (malicious prosecution, false arrest, and false imprisonment claims under § 1983); *Drouillard v. Metropolitan Life Ins. Co.*, 107 Mich. App. 608, 619-20 (1981) (malicious prosecution claim under M.C.L. §

600.2907). That is, if probable cause for Plaintiff's arrest existed, these claims are precluded. *Hansel*, 30 F. Supp. 2d at 986.

The Supreme Court has defined "probable cause" as the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). Probable cause is reasonable grounds for belief, supported by "less than *prima facie* proof, but more than mere suspicion." *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (internal citation and quotation omitted).

Plaintiff's only argument regarding probable cause for the arrest is that "[s]ince both counts [of Trespassing and Interference with Police Authority] were dismissed, there was never probable cause for the arrest." (Dkt. 28, at 19.) Plaintiff cites no case law in support of this argument. And the Sixth Circuit has held the opposite. *See, e.g.*, *Bowen v. Phalen*, 91 Fed. App'x 477 (6th Cir. 2004) (affirming summary judgment and finding probable cause existed to arrest plaintiff for trespassing, even though charge was subsequently dismissed). Probable cause does not depend on whether charges are brought or later successfully proven; rather, the question is whether the officers "were justified in their belief that plaintiff had probably committed or was committing a crime." *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988).

The Court finds the Defendant officers had probable cause to arrest Plaintiff. As discussed, on the night of Plaintiff's arrest, it was dark, Plaintiff was wearing a heavy coat and hood, and was observed by Defendant officers Pilchak and Wojtowicz walking through a restricted police-only lot. Defendant officers Porta, Cates, and Diggs-Taylor responded

5

to a radio call that there was an individual in the back parking lot. Plaintiff admits when approached by Defendant officers he was "confused" by their questions, and ultimately responded "I don't know, I don't know." (Dkt. 28-2, at 30-31.) The Court finds, even in a light most favorable to Plaintiff, the officers had probable cause to arrest Plaintiff, and thus, Plaintiff's false arrest and/or imprisonment, unreasonable seizure without probable cause, and malicious prosecution claims fail.

### B.     Count I

Plaintiff also alleges the Defendant officers used excessive force during his arrest. The use of excessive force during an arrest of a person at liberty is analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). That is, a police officer may use only such force as is objectively reasonable under the circumstances. *Id.* at 397. In evaluating the reasonableness of force, courts must examine the facts and circumstances of each case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The court should judge the lawfulness of the conduct "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* This standard contains "a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002).

Defendant contends summary judgment is appropriate here under the reasonableness standard, "giving deference to the police officers that [] were forced to make split-second decisions about the amount of force necessary." (Dkt. 26, at 25.)

Plaintiff, on the other hand, contends the use of force was unreasonable. Plaintiff points to the (lack of) severity of the crime of trespassing, and contends Plaintiff "was not trying to flee or even attack Defendants in any way." (Dkt. 28, at 23-24.) In addition, Plaintiff argues force was used after he was handcuffed, and such force is "excessive as a matter of law." (*Id.* at 25.)

The Court finds there are genuine issues of material facts regarding whether the amount of force used was reasonable under the circumstances. First, Plaintiff alleges at least some blows and strikes occurred after he was handcuffed. Under Sixth Circuit precedent, force against a neutralized person is unreasonable. *See, e.g.*, *Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir. 2002). Moreover, Plaintiff contends he did not try to flee or resist. In the light most favorable to Plaintiff, the incident of alleged excessive force took place when Plaintiff, a 71-year-old, was in a police-only parking lot directly outside the police station, surrounded by five officers, and at least partially up against a vehicle. Under these circumstances, the Court concludes there are genuine issues of fact precluding summary judgment. *See Meirthew v. Amore*, 417 Fed. App'x 494, 497 (6th Cir. 2011) (affirming genuine issues of fact precluded summary judgment when force was used on plaintiff who was "unarmed, handcuffed, surrounded by police officers, physically restrained, and located in the secure confines of a police station").

**C.    Count VI**

Plaintiff asserts Defendant City of Taylor is liable for failing to properly train and/or supervise police officers regarding the proper use of force.[2] A municipality may not be liable under § 1983 based on a theory of *respondeat superior*. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). To establish municipal liability, a plaintiff must show that the alleged failure to properly train its officers "amounts to a deliberate indifference to the rights of persons with whom police come in contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Deliberate indifference requires a showing that a "municipal actor disregarded a known or obvious consequence of his action." *Stemler*, 126 F.3d at 865 (internal citation omitted). Here, Defendants contend they are entitled to summary judgment on the matter of municipal liability. The Court agrees.

Although Plaintiff presents some evidence of the individual Defendant officers' disciplinary history (*e.g.*, that Defendant Wojtowicz has been the subject of three internal affairs investigations and Defendant Porta has been the subject of one internal affairs investigation), the evidence on this issue does not demonstrate a pattern of regular constitutional violations by the named officers that Defendant City of Taylor ignored. (Dkt. 28, at 12-14.) Defendant has proffered evidence that the City of Taylor's police officers receive in-depth field training that takes place over approximately four months, and subsequently are reviewed daily by shift supervisors. (Dkt. 29-5.) The City of Taylor has policies in place specifically relating to arrests and use of force. (*Id.*) In addition, each

---

[2] Because the Court grants summary judgment for Defendants on Plaintiff's malicious prosecution, unreasonable seizure, and false arrest and/or imprisonment claims, the Court does not consider related failure to train claims. (Dkt. 1, at 8-9.) *See Hansel*, 30 F. Supp. 2d at 990 (granting summary judgment in favor of county on failure to train claim without reaching merits because plaintiff failed to establish any deprivation of constitutional rights).

officer testified that they have been trained in the use of force. (*See, e.g.*, Dkt. 28-6, at 4 (testifying that Defendant Diggs-Taylor received hands-on use of force training when hired in 2012).) The Court finds there is no genuine issue of fact on the issue of municipal liability and that no reasonable jury could return a verdict for Plaintiff on this issue. Defendants' motion for summary judgment on this claim is GRANTED, and the City of Taylor is hereby DISMISSED from these proceedings.

### D. Qualified Immunity

The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether an officer is entitled to qualified immunity, the court must first determine whether the facts, viewed in the light most favorable to the plaintiff, show that a constitutional violation has occurred. *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). Then, if the court finds a constitutional violation, it must consider whether the violation involves "clearly established constitutional rights of which a reasonable person would have known." *Id.* (quotation omitted).

There are genuine issues of fact regarding whether the use of force by Defendant officers was necessary under the circumstances, and whether such force was employed after Defendant was handcuffed. The law in the Sixth Circuit is settled with regard to both of these issues. The right "to be free from excessive force" and from "force applied after the subduing of a suspect" are both clearly established rights. *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 902 (6th Cir. 2004). Viewing the facts in the light most favorable to

Plaintiff, there are genuine issues of fact regarding whether Defendant officers violated Plaintiff's clearly established constitutional rights. Thus, individual Defendants' motion for summary judgment on the issue of qualified immunity is denied.

### III. Conclusion

For the reasons stated, the Court hereby GRANTS IN PART and DENIES IN PART Defendants' motion for summary judgment. Specifically, the Court GRANTS Defendants' motion with respect to Plaintiff's malicious prosecution, unreasonable seizure, and false arrest and/or imprisonment claims (Counts II, III, IV, V), and those claims are hereby DISMISSED. The Court also GRANTS Defendants' motion on the issue of municipal liability (Count VI), and the City of Taylor is hereby DISMISSED from these proceedings with prejudice. The Court DENIES Defendants' motion as to Plaintiff's claim of excessive use of force (Count I) and on the issue of qualified immunity for the individually named Defendants.

SO ORDERED.

S/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: February 5, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 5, 2016, by electronic and/or ordinary mail.

S/Carol J. Bethel
Case Manager